# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JOHN PATRICK STOKES**,

Debtor.

Case No. **21-90013-JDP**

## MEMORANDUM of DECISION re PENDING MATTERS

In this Chapter 13 bankruptcy,[1] the Court conducted a telephonic

hearing on March 30, 2021, concerning the following pending matters: (1) the

Court's Order to Show Cause, ECF No. 18, concerning Debtor's eligibility to

be a debtor in this case under § 109(h)(1); (2) Debtor's "Motion and Request

[for] Disqualification of Chapter 13 Trustee Robert Drummond" filed on

February 25, 2021, ECF No. 22 ("Disqualification Motion"); (3) interested

party LSF8 Master Participation Trust's ("LSF8") Motion to Modify Stay filed

on March 5, 2021, ECF No. 32; and (4) the Trustee's Motion to Dismiss With

Prejudice filed on March 10, 2021, ECF No. 40.  Debtor, Trustee, and counsel

---

[1] "ECF Nos." refer to the docket in this case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

for LSF8 appeared and offered arguments at the hearing.  Other appearances

were noted on the record.

This Court has jurisdiction of this bankruptcy case under 28 U.S.C. §

1334(a).  All pending matters discussed herein constitute core proceedings as

defined in 28 U.S.C. § 157(b)(2).  This Memorandum of Decision includes the

Court's findings of fact and conclusions of law and disposes of the pending

matters. [2]

## 1.  LSF8's Motion to Modify Stay, ECF No. 32.

Through it Motion to Modify Stay ("the Motion"), LSF8 seeks retroactive

relief from the automatic stay as to the real property that formerly served as

security for its claims against Debtor, which it later purchased at a deed of

trust Trustee's sale, commonly known as 12887 Raven Way (f/k/a 820 Red

Owl Road), Bigfork, Montana (the "Raven Way Property").  At the hearing,

---

[2]  In a separate Order entered April 21, 2021, ECF No 64, the Court denied Debtor's
"Affidavit of Prejudice Judge James Pappas" filed February 25, 2021, at ECF No. 23
("Recusal Motion").  In that Order, the Court provides a detailed account of Debtor's
several bankruptcy filings, and his other maneuvers over the years to contest the LSF8
mortgage claim and to impede its efforts to enforce its contractual and legal rights as a
creditor.  For context, the Court incorporates by reference the background information
and facts recited in that Order in this Decision.

Debtor complained that he had not received a copy of LSF8's Motion in the mail, although this representation is contradicted by the certificate of mailing in the Motion.  Debtor agreed that LSF8 could email him a copy of the Motion following the hearing, and the Court granted Debtor additional time to respond to the motion.   Debtor filed a response on April 7, 2021, at ECF No. 58.  However, his submission neglects to address the focal issue raised in the Motion:  whether LSF8 should be allowed to proceed in a state court eviction action against Debtor regarding the Raven Way Property.  Instead, in his response, Debtor once again attempts to use this bankruptcy proceeding to relitigate matters that have already been addressed in the various State Court actions.  The Court declines Debtor's invitation to review the rulings of the Montana courts.

The following events appear undisputed concerning the Motion. Debtor and his spouse Pamela Stokes ("Pamela") apparently purchased the Raven Way Property in 1994.  ECF No. 53 at 10 of 66.  LSF8 claims to have become the holder of the deed of trust on the Raven Way Property granted by Debtor and Pamela to secure a loan.  *See* Mont. Bankr. Case No. 09-602650-RBK, ECF No. 43;  Mont. Bankr. Case No. 16-60720-JDP Case, ECF No. 53-1;

3

Mont. Bankr. Case No. 18-60681-JDP, ECF No. 37.[3]  Debtor and Pamela transferred the Raven Way Property to their daughter via a quitclaim deed in 1998.  ECF No. 53 at 10 of 66.  As part of a settlement entered during Debtor's 2009 bankruptcy case, the daughter then transferred the Raven Way Property back to Pamela in a quitclaim Deed dated June 13, 2012.  *See* Adversary Proceeding No. 11-00009, ECF No. 40-2.  A Trustee's Deed filed in Lake County, Montana on August 19, 2016 ("Trustee's Deed") reflects that a Trustee's Sale of the Raven Way Property was scheduled to occur on July 19, 2016.  To prevent this sale from going forward, Debtor commenced a Chapter 13 bankruptcy case, on July 15, 2016, Case No. 16-60720 ("2016 Bankruptcy").  The 2016 Bankruptcy was dismissed on August 12, 2016 after Debtor failed to appear for a § 341(a) meeting of creditors.  Following the dismissal of the 2016 Bankruptcy, the Trustee's Sale was completed, a recorded Trustee's Deed shows that LSF8 purchased the Raven Way Property at the sale, and LSF8 now appears of record to be the owner of the Raven Way Property.

To thwart LSF8's legal efforts to evict him from possession of the Raven

---

[3] *See also* Pamela's prior bankruptcy, Case No. 14-61170.  At ECF No. 51 in that case, Pamela withdrew her object to LSF8's motion to modify stay after LSF8 had "produced the original promissory note."

Way Property, Debtor commenced another Chapter 13 bankruptcy case on July 12, 2018, Case No. 18-60681 ("2018 Bankruptcy"). Following entry of an order granting LSF8 relief from the automatic stay by this Court and the dismissal of the 2018 Bankruptcy, LSF8 continued its eviction action. On December 21, 2020, the Montana Twentieth Judicial District Court, Lake County entered a summary judgment against Debtor and Pamela and in favor of LSF8 in the eviction action. Debtor apparently reacted by commencing the present Chapter 13 bankruptcy case on January 29, 2021. Three days later, on February 1, 2021, the State Court entered a "Judgment for Possession of Real Property" wherein it determined that LSF8 was entitled to immediate possession and restitution of the Raven Way Property, and to a writ of possession to evict Debtor.

In this bankruptcy case, LSF8 seeks relief from the automatic stay once again under § 362(d)(1) for "cause" alleging that the Debtor filed and is pursuing the bankruptcy case in bad faith, and under § 362(d)(2), alleging that Debtor lacks any equity in the Raven Way Property and that it is not necessary to Debtor's attempt to reorganize. Based upon Debtor's conduct in these cases, LSF8 requests annulment of the stay retroactive to the date of the

bankruptcy filing to validate the State Court's order entered shortly thereafter. Under 11 U.S.C. § 362(g), the burden of proof under subsection (d) on the issue of the debtor's equity in property is on the moving party, LSF8, and the party opposing such relief, Debtor, has the burden of proof under all other issues.   The uncontroverted items in the record show LSF8 is entitled to the relief it seeks.

The recorded Trustee's Deed filed after the sale demonstrates, presumptively, that LSF8 is the current owner of the Raven Way Property. Nothing Debtor has argued, and none of the documentation Debtor has submitted to this Court, shows otherwise.  As a result of the prepetition foreclosure sale and recordation of the Trustee's deed, Debtor no longer holds any equitable or legal interest in the Raven Way Property.  *See* Mont. Code Ann. § 71-1-318.   And the filing of a bankruptcy petition cannot reinstate Debtor's title.  *Edwards v. Wells Fargo Bank, N.A. (In re Edwards)*, 454 B.R. 100, 106 (9th Cir. BAP 2011). "Instead, the debtor is essentially a 'squatter,' and thus cause for relief from stay is established." *Id*.

Moreover, Debtor's serial filings under Chapter 13, without any realistic prospect or sincere attempts to confirm a plan to pay his creditor's claims

6

demonstrate that this bankruptcy case is just another litigation tactic by

Debtor designed to impede LSF8's efforts to proceed in State Court to enforce

its rights.  Because Debtor can assert his claims and defenses against LSF8 in

State Court (and has indeed done so),[4] and because he has no realistic hope of

confirming a Chapter 13 plan, the Court exercises its discretion under both

§§ 362(d)(1) and (2) to grant relief from the automatic stay so LSF8 may

proceed in State Court.

Given Debtor's history of attempting to manipulate the Bankruptcy

Code to serve his own litigation needs, and given the circumstances in this

case, the Court is also persuaded that good cause exists to retroactively annul

the automatic stay to January 29, 2021.  Section 362(d) expressly authorizes a

bankruptcy court to annul the automatic stay in a bankruptcy case.  In

deciding whether it should grant such relief, the Court looks at the

circumstances of the case and balances the equities of the parties' respective

positions.  *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997); *In re Fjeldsted*, 293 B.R. 12, 24 (9th Cir. BAP 2003). Under this approach, the

---

[4]  At the hearing, Debtor indicated his intent to appeal the State Court's decisions in the eviction action.

bankruptcy court may consider (1) whether the creditor was aware of the bankruptcy petition and automatic stay and (2) whether the debtor engaged in unreasonable or inequitable conduct. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055. But these factors are not always determinative. *Id*. Each case presents its own unique circumstances that must be evaluated on a case by case basis. *Id*. When assessing the equities of a case, bankruptcy courts may also consider the twelve factors articulated by the court in *Fjeldsted*, 293 B.R. at 25. The *Fjeldsted* factors provide an analytical framework and any one factor may be dispositive in comparison to the others. *Id*. Thus, determining whether annulment is proper is made on a case by case basis. *Nat'l Envtl. Waste Corp.* 129 F.3d at 1055.

Here, the record shows that Debtor is a holdover following a foreclosure sale, occupying the Raven Way Property without a lease or other permission of the purchaser, LSF8. Debtor's purpose in filing this case, and his several prior Chapter 13 bankruptcy cases, was primarily to deter and impair LSF8's efforts to recover the Raven Way Property. Debtor argues that both LSF8 and the State Court were made aware of this January 29, 2021 bankruptcy filing before entry of the judgment for possession. But even if that is so, the equities

8

still weigh heavily in favor of those parties in attempting to deal with Debtor's

antics.  Debtor's conduct in accessing the bankruptcy process for

inappropriate reasons was unreasonable and inequitable.  On this record, the

Court is persuaded to exercise its discretion to retroactively annul the

automatic stay to Debtor's petition date, January 29, 2021 so LSF8 and the

State Court may continue the pending action without interference by Debtor's

bankruptcy filing.

A separate order granting the LSF8 motion and annulling the automatic

stay will be entered.

**2. Debtor's Motion to Disqualify the Trustee, ECF No. 22.**

In this motion, Debtor asks the Court to disqualify the Chapter 13

Trustee based upon his alleged "extreme personal bias and prejudice by

Robert Drummond against the individual John Stokes."  ECF. No. 22 at 1.  The

Court will not do so.

Debtor obviously resents that Trustee has (again) refused to endorse his

legal assault on LSF8 or to support his insincere efforts to reorganize.  But in

his official role as a fiduciary and the legal representative of the bankruptcy

estate, Trustee was duty-bound not to align with Debtor's schemes.  *See In re*

9

*AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006), *aff'd and adopted*, 530 F.3d 832, 844 (9th Cir.2008) (other citations omitted).  The Code provides that "after notice and a hearing, may remove a trustee, other than the United States Trustee . . . for cause."  11 U.S.C. § 324(a); s*ee AFI Holding*, 530 F.3d at 845.  But removal of a trustee "is an extreme remedy." *In re Log & Conventional Homes, Inc.*, 2011 WL 7145883, *4 (9th Cir. BAP 2011), citing *Morgan v. Goldman (In re Morgan)*, 375 B.R. 838, 847 (8th Cir. BAP 2007).  The party seeking removal of a trustee has the burden to prove specific facts which support removal for cause. *Id*. at 845, citing *Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 692 (7th Cir.1992), and *Alexander v. Jensen–Carter (In re Alexander)*, 289 B.R. 711, 714 (8th Cir. BAP 2003), *aff'd*, 80 Fed. Appx. 540 (8th Cir.2003).  Whether a trustee should be removed under § 324(a) for cause "is left to the sound discretion of the bankruptcy court." *AFI Holding*, 530 F.3d at 844 (citing cases).

Debtor has not offered any evidence, nor even any credible argument, to warrant Trustee's removal in this case.  Debtor contends that Trustee has refused to address what Debtor contends were violations of     § 362(a); that Trustee has participated in what Debtor characterizes as "felony mortgage theft" and misjoinder of felony; that Trustee intentionally deceived Debtor;

and that Trustee refused to seek to enforce previous Court orders and settlements.  But Debtor has not believably shown that any of those offensive circumstances existed or that Trustee's conduct amounted to anything other than his exercise of appropriate judgment in refusing to support Debtor's baseless allegations.  Debtor's frustration with Trustee's lack of support does not call for removal.   Indeed, Trustee's objectivity and patient persistence in his dealings with Debtor and his tactics has been commendable.  That Debtor could not ensnare Trustee in his misguided quest to retain the Raven Way Property "mortgage-free", dating back to 2009, is not a reason to remove Trustee.

### 3.  Trustee's Motion to Dismiss, ECF. No. 40.

#### A.  Debtor's eligibility for bankruptcy relief.[5]

Trustee argues that Debtor is not eligible for relief under Chapter 13 because he is not "an individual with regular income" as required by § 109(e).

---

[5]  Trustee moves to dismiss this bankruptcy case with prejudice on several grounds, including his lack of eligibility under § 109(h)(1).  The Court raised similar concerns via its Order to Show Cause.  However, as discussed below, the Court declines to rule at this time on whether Debtor is eligible for relief based upon the timing of his credit counseling session because there are significant factual issues concerning that issue which can only be resolved after an evidentiary hearing.

An individual with regular income is defined in § 101(30) as someone "whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13[.]"

In this case, Debtor's Schedule I reflects that neither Debtor nor his spouse are employed.  Debtor and his spouse receive $1,201.00 each month in social security and disability benefits.  They also receive $74.00 per month in SNAP benefits.  This is the extent of their regular income.  While "regular income" under § 109(e) includes social security, *In re Hagel*, 184 B.R. 793, 797 (9th Cir. BAP 1995), here, it is not the source of the income that is problematic, it is the amount.

Debtor's monthly expenses are shown in his Schedule J.  By any realistic standard Debtor's expenses appear grossly understated and insufficient to pay his basic monthly expenses.  Debtor lists monthly living expenses totaling only $491.00 including utilities ($194 per month), vehicle insurance ($135 per month), transportation ($50 per month), homeowner's or renter's insurance ($45 per month), food ($40 per month), medical and dental needs ($12 per month) and personal care products and services ($15 per month).

Though it is likely Debtor may shortly be evicted from the Raven Way

12

Property, this amount includes nothing for rent or a mortgage payment. Even if he assumes he will continue in possession of the Raven Way Property, Debtor's monthly expenses do not include any amount for maintenance, repairs, or real property taxes for the Raven Way Property, which according to Debtor's schedules has a current value of $2.7 million. Debtor's expenses also include nothing for clothing, entertainment or unanticipated or emergency needs. And the Court cannot be persuaded that Debtor and his spouse can survive on roughly $1.33 for food per day.

As can be seen, Debtor's list of expenses is both incomplete as well as grossly understated. The total monthly income of $1,275.00 received by Debtor and his spouse will surely be consumed by their ordinary living expenses. Because they cannot even pay living expenses, Debtor simply has no viable means to propose a viable debt-repayment plan. Under these facts, based upon Debtor's own sworn schedules, the Court agrees with Trustee that § 101(30) is not satisfied and Debtor cannot show he is entitled to Chapter 13 relief.

**B.  Debtor's petition and Chapter 13 plan were filed in bad faith.**

Trustee next argues that this case should be dismissed due to Debtor's

13

lack of good faith.  Section 1307(c) sets forth nonexclusive grounds which may constitute cause for dismissal of a chapter 13 case. Although not specifically listed, bad faith is a "cause" for dismissal under § 1307(c).  *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994). In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances."  *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir.1999).  The determination of whether a debtor filed a petition or plan in bad faith to justify dismissal for cause is left to the sound discretion of the bankruptcy court.  *Leavitt*, 171 F.3d at 1222-23.

A finding of bad faith does not require fraudulent intent by the debtor. *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D. Mont. 2001).  In *Leavitt*, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith a bankruptcy court should consider (1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.  *Leavitt*, 171 F.3d at 1224.  The *Leavitt*

14

assessment remains in use in this circuit. *In re Khan*, 523 B.R. 175, 185 (9th Cir. BAP 2014).

Having considered the totality of the circumstances, including the *Leavitt* factors, the Court concludes that there is ample cause shown in the record to dismiss this case with prejudice because the petition and plan were filed in bad faith.

This is Debtor's fifth bankruptcy case filed since 2009.[6]  His prior Chapter 13 cases have been dismissed.  In the Court's opinion, it is clear that all of Debtor's bankruptcy cases were filed in an effort by Debtor to leverage the Bankruptcy Code and frustrate LSF8's efforts to enforce its rights in the Raven Way Property.  Debtor has never proposed a plan to pay the LSF8 claim and he has used the bankruptcy process merely to delay LSF8.  It can be presumed that Debtor filed the current bankruptcy case knowing that his proposed Chapter 13 Plan is not confirmable on its face.

---

[6]  For reasons not apparent in the record, Debtor's spouse, Pamela, did not join him in this bankruptcy case. For context, the Court notes that she has also filed for bankruptcy relief in the past, Case No. 14-61170.  In that Chapter 13 case, Pamela eventually consented to entry of an order granting LSF8's stay relief motion, ECF No. 51, and confirmed a plan providing no payments on the LSF8 mortgage claim, ECF Nos. 53 and 61.  She completed the plan and was granted a discharge, ECF No. 73.

Debtor's five bankruptcy cases represent a "pattern of abuse."   Debtor filed the 2016 Bankruptcy and the 2018 Bankruptcy under Chapter 13, but never secured confirmation of a Chapter 13 plan.  Debtor filed each of his bankruptcy cases to impose a series of stays to stop LSF8's foreclosure efforts and to interrupt State Court litigation.  This is the third time Debtor has accessed Chapter 13 as his tool of choice as a shield against LSF8's actions without once fulfilling his obligations as a Chapter 13 debtor.

After considering the totality of the circumstances, including the four *Leavitt* factors, the Court concludes that Debtor did not file his Chapter 13 petition or propose his Plan in good faith and that dismissal of the case is required.  While he has been admonished by the Court about his strategic abuse of the bankruptcy system in the past, Debtor has repeatedly refiled for relief.  To discourage him from doing so again, dismissal of this case must be with prejudice.

### 4.  **Debtor's Chapter 13 Plan is not confirmable**.

Not surprisingly, Debtor's lack of good faith in his approach to seeking bankruptcy relief in the past, and in his treatment of LSF8 in these cases, constitute a barrier to his ability to confirm a plan in this case.  *See*  11 U.S.C.

16

§ 1325(a)(3) (requiring that, to be confirmed, a plan be filed in good faith). But there are other problems with Debtor's approach that will prevent him from confirming a plan.

First, Mont. LBR 9009-1(b) provides that "Debtor's Chapter 13 plan shall conform to Mont. LBF 19. Debtor's Chapter 13 Plan, ECF No. 10, is, apparently, his own creation, and bears little resemblance to Mont. LBF 19.

Next, Debtor's Plan provides for 36 monthly payments of $25.00 each. Put another way, Debtor proposes to pay a total of $900.00 in plan payments to his creditors over the next three years. Debtor's Plan payments are likely insufficient to even pay the expenses of administering the plan. Moreover, the Montana Department of Revenue has filed a claim in the case, totaling $52,772.57, of which, $1,948.64 is for unpaid priority taxes. Four other creditors have also filed claims in the case totaling almost $800,000.00.[7]

The Court concludes that Debtor's Plan cannot be shown to be feasible as required by § 1325(a)(6) which mandates that, to be confirmed, Debtor

---

[7] At the hearing, Debtor's reaction to the MDOR claim was to describe it as "bogus" because it was, in part, based upon unfiled tax returns and represented an estimate by the creditor of his tax liability. Debtor has objected to allowance of the MDOR and the claim of the four other creditors.

must show that he will be able to make all payments under the plan.  This is because Debtor proposes to fund his plan and pay his creditors "in full" by the recovery of money damages from LSF8 and others in pending and "to be filed" litigation.  While, on this record, the Court makes no final rulings about Debtor's claims, given Debtor's arguments about the factual foundations and his theories of recovery and allegations, the Court is highly skeptical of his prospects for any success.  Suffice to say, the Court is comfortable concluding that Debtor will be unable to persuade it that his Chapter 13 Plan, based wholly upon speculative damage recoveries from his ambitious litigation claims, is feasible.

As Trustee convincingly argues, "Chapter 13 should not serve as a vehicle for re-litigating State court actions against LSF8."  Debtor is once again attempting to litigate in this Court many matters that have already been resolved in State Court.  Dismissal of this case, with a two-year bar to refiling, is required to preventing him from doing so again. [8]

---

[8]  In Debtor's prior Chapter 13 case, just as here, the Court granted LSF8's motion for stay relief under §§ 362(d)(1) and (2), and attempted to make that grant effective in any subsequent cases filed by Debtor under § 362(d)(4).  *See* Case No. 18-60681, ECF No. 57. The Court also dismissed Debtor's bankruptcy case.  On appeal, the Ninth Circuit BAP deemed Debtor's appeal of the stay relief order moot due to the case dismissal, but

### 5.   Debtor's eligibility issues under § 109(h)(1).

Section 109(h)(1) provides that, with certain exceptions,[9] an individual

cannot be a debtor under any chapter of the Bankruptcy Code unless he or she

has received an approved briefing (the "credit counseling" referenced in the

Notice) "during the 180-day period ending on the date of the filing of the

petition...."  This Court has routinely dismissed cases when debtors were

found to be ineligible, whether because the credit counseling was taken

outside the 180–day window or was taken post-petition without requesting a

waiver and meeting the requirements of § 109(h)(3).  *See e.g., In re Thorson*,

---

reversed the § 362(d)(4) relief because, as a purchaser of the Raven Way Property at the
foreclosure sale, LSF8 was no longer a creditor with a security interest in the property.
*In re Stokes,* BAP Case No. 18-1293 at 9-10, 14.  In its decision, the BAP observed that
"LSF8 is not without other remedies which could provide similar results [to § 362(d)(4)
relief].  LSF8 could have requested a re-filing bar in the litigation for dismissal of
[Debtor's] bankruptcy case.  Or, it could do so upon [Debtor's] next bankruptcy filing,
assuming there is one and such relief is necessary to complete the eviction."  *Id.* At 13.
Here, Trustee, not LSF8, requests that the dismissal of this case be "with prejudice", or
in other words, with a bar to refiling.  However, it is insignificant that Trustee, not LSF8,
is the moving party.  The fundamental focus of the request remains the same: Debtor's
repeated bad faith attempts to use the Bankruptcy Code to harass and impair LSF8's
efforts to enforce its rights in the Raven Way Property.

[9]  Debtor does not qualify under any of the exceptions to the § 109(h) credit counseling
requirements, something Debtor has not contested.

Case No. 21-90021, ECF No. 15.

Debtor commenced this case by filing a Chapter 13 bankruptcy petition on January 29, 2021.  Debtor did not submit all the documents required to complete his filing on January 29, 2021.  As a result, the bankruptcy court generated a Deficiency Notice on January 29, 2021, at ECF No. 6 ("Notice").  A copy of the Notice was mailed to Debtor on February 1, 2021. *See* ECF No. 8. Among the deficiencies listed in the Notice was that Debtor had not filed his "Credit Counseling Certification."  The Notice required that Debtor cure the deficiencies within fourteen days of the date of filing of his petition.

A "Certificate of Counseling" was filed by Debtor on February 16, 2021, ECF No. 14 ("Certificate").  The Certificate, issued by InCharge Debt Solutions, recites that Debtor "received" credit counseling on February 5, 2021 at 6:51 p.m.  Because the Certificate showed the counseling occurred  after Debtor's petition date, upon advice of the Clerk, the Court entered an Order to Show Cause on February 17, 2021, at ECF No. 18 ("Show Cause Order")[10]

---

[10]  Debtor requests in the Disqualification Motion that the Trustee "make[] no further motions in this case such as the Order to Show Cause [Trustee] prepared for Judge Pappas to sign."  ECF No.22.  Debtor's assumption is incorrect; Trustee played no role in the preparation or issuance of the Show Cause Order.

that directed Debtor to show cause why this case should not be dismissed for failure to timely comply with § 109(h)(1).  Debtor then amended his voluntary petition, ECF No. 25, to reflect that he received his required "briefing" within the "180 days" before he filed his petition."

Debtor represented at the hearing that he indeed received the required briefing on January 26, 2021, but that InCharge Debt Solutions did not provide Debtor a certificate until "payment had been received."  Debtor argues that InCharge Debt Solutions sent him a fee waiver application via email on January 26, 2021, but Debtor apparently did not complete the fee waiver application because "[i]t would take weeks to process."  An email sent by InCharge Debt Solutions to Debtor on January 26, 2021, at 7:49 a.m. confirms that InCharge Debt Solutions sent Debtor a fee waiver application.  However, nothing in the email suggests that it would take weeks to process the application.  That appears to be an assumption Debtor made unilaterally.  Nor is there anything in that email showing Debtor completed the credit counseling on January 26.

Debtor's representations that he timely received credit counseling despite the recitations in the Certificate create issues of fact.  However, the

21

Court, above, has decided to dismiss this bankruptcy case with prejudice for cause.  While the Court remains skeptical that Debtor could demonstrate by credible evidence that he is eligible for relief under § 109(h)(1), for now, it will hold its Order to Show Cause in abeyance.  If it were to become necessary, the Court can later decide whether Debtor is eligible for Chapter 13 relief.

**6**.     **Conclusion**

Apparently undeterred by his lack of success in his prior attempts to manipulate the Bankruptcy Code in his continuing battles with LSF8 over its rights in the Raven Way Property, Debtor has filed yet another bad faith Chapter 13 case without any credible basis to show that he can confirm a plan. Debtor repeats his arguments challenging the validity of LSF8's rights to enforce the deed of trust, and now insists that he may recover damages from LSF8 and others for violating the automatic stay and this Court's various orders.  But Debtor has lost in his legal attacks on LSF8's status and lacks a credible factual or legal basis for recover any damages. Even if Debtor might have a claim, any resulting damages are likely more than offset by the value he has received by occupying the Raven Way Property for many years without mortgage payments or rent.  The Court again declines to entertain

Debtor's mischief.

Consistent with the foregoing, the Court will enter separate orders disposing of the pending matters as follows:

A.  That the Court's Order to Show Cause, ECF No. 18, concerning Debtor's eligibility to be a debtor in this case under § 109(h)(1) be held in abeyance and decided later, if necessary.

B.  That LSF8's Motion to Modify Stay, ECF No. 32, be granted, and that the § 362(a) automatic stay in this case be annulled retroactive to January 29, 2021, the bankruptcy petition filing date, to validate any State Court orders entered during this bankruptcy case, and to permit LSF8 to proceed with the eviction action on the Raven Way Property.  As provided in Rule 4001(e), the Court orders that order shall be effective when entered and shall not be stayed.

C.  That Debtor's "Motion and Request [for] Disqualification of Chapter 13 Trustee Robert Drummond", ECF No. 22, be denied.

D.  That the Trustee's Motion to Dismiss With Prejudice filed on March 10, 2021, ECF No. 40, be granted; that this bankruptcy case be dismissed with prejudice; and that Debtor be prohibited from filing another  further

23

bankruptcy petition for a period expiring two years after the date this order

becomes final.[11]

DATED: April 21, 2021

_____

Jim D. Pappas
U.S. Bankruptcy Judge

---

[11]   On April 9, 2021, Debtor filed a motion asking the Court to delay any rulings on pending matters until after his § 341(a) meeting on April 19, 2021 is concluded, ECF No. 59.  That date has passed and the Court will therefore enter an order denying that motion as moot.